UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANED LOPEZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>P.W. STEPHENS,<br><br>    Defendant. | Case No. 15-cv-03579-JD<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Re: Dkt. No. 64 |

This is a wage-and-hour class and collective action brought by two named plaintiffs on behalf of themselves and 519 fellow current and former employees who performed asbestos abatement and related work for defendant P.W. Stephens Environmental, Inc. ("PWS"). The parties reached a proposed settlement and now seek preliminary approval. The Court grants preliminary approval and certifies the class for purposes of settlement.

## BACKGROUND

Plaintiffs are current and former PWS employees who performed asbestos abatement, lead removal, and mold remediation in California during the class period. First Amended Complaint, Dkt. No. 62 ¶ 3. PWS "is an environmental remediation company that provides asbestos abatement and other environmental remediation services to residence and commercial buildings" throughout California. *Id.* ¶ 3. The named plaintiffs allege that PWS violated the federal Fair Labor Standards Act ("FLSA") by failing to pay employees minimum wages for all hours worked, failing to provide overtime pay as warranted, and failing to make, keep, and preserve adequate and accurate records of the same. *Id.* ¶¶ 35-52. Plaintiffs also allege additional wage and hour violations under California law, including failures to pay proper wages, failures to provide duty-free meal periods, failures to reimburse certain employees for expenses related to use and maintenance of company vehicles, and failures to pay all wages due upon termination of

employment. *Id*. ¶¶ 6, 53-110. Plaintiffs also bring California Private Attorney General Act ("PAGA") and unfair competition law claims. *Id*. ¶¶ 111-125.

The parties participated in a full-day mediation on March 9, 2016. Dkt. No. 64 at 6. In that session, they reached a settlement for both the FSLA and Rule 23 classes. The parties now ask the Court for preliminary approval of the settlement.

## DISCUSSION

### I. THE PROPOSED SETTLEMENT

The proposed class consists of about 519 "individuals who performed asbestos abatement, lead removal, mold remediation and other services" while employed by PWS in California during the class period, which runs from April 29, 2011 through August 21, 2015. Dkt. No. 64-5 at 3-4. Individuals that worked for PWS through a third party, such as subcontractors or staffing agencies, are not included in the class. *Id*. The proposed FLSA collective action will include the named plaintiffs and all class members who "(a) cash a Settlement Check" and/or (ii) formally opt in to the action "by filing a Consent to Join." *Id*. at 4.

Under the proposed settlement agreement, PWS will pay $1,500,000 into a non-reversionary settlement fund, which will be the source of settlement administration costs (up to a maximum of $19,000), attorney's fees and costs (up to a maximum of $375,000 in fees and up to $15,000 in costs as decided by the Court in subsequent proceedings), class representative service awards for each of the two representatives if the Court approves the request (totaling $10,000), PAGA penalties to the California Labor and Workforce Development Agency, and monetary relief for the class. Dkt. No. 64-1 ¶¶ 21-24, 28. PWS will separately pay the employer's share of payroll taxes on the amounts that are paid to the class members for unpaid wages. Dkt. No. 64 at 3. Monetary relief for the class will be provided out of the remaining net settlement fund of $1,080,000. Dkt. No. 64-1 at 8.

The net settlement fund will be distributed to the class "pro rata based upon the number of compensable workweeks each class member worked during the Class period, taking into account their respective last known hourly wages, whether they were assigned additional responsibilities as a Driver, and whether they signed a release prior to this settlement being reached." *Id*. ¶ 22. The

2

approximately 426 class members who signed prior releases and received a payment of $500 will have their payments reduced by the amount of the prior payment received. *Id*. ¶ 23; Dkt. No. 64-5 at 5. By this mechanism, about $213,000 will be reallocated and distributed to class members who did not sign releases. Class members who did not sign releases will receive a minimum settlement of $500. Dkt. No. 64-1 ¶ 23. Relief for class members with claims for unpaid driving expense reimbursements will be enhanced by a multiplier of 1.1. Dkt. No. 64-5 at 10.

The class members do not have to submit claim forms to get a settlement check -- checks will be mailed directly to each class member and he or she will have 90 days to cash the check. Dkt. 64 at 2-3. After 90 days, amounts attributable to uncashed checks will be distributed to any qualifying class member who demonstrates that he did not receive payment in the first round. If the remainder amounts to more than $10,000, a second round distribution to the class will take place. *Id*. at 3. If the amount remaining from the uncashed checks is less than $10,000, the funds will be paid to *cy pres* beneficiary California Rural Legal Assistance, Inc. Dkt. No. 64-5 at 19.

Under the terms of the Settlement, all class members who do not opt out will release PWS from all claims for:

> all causes of action, claims, liens, demands, damages, penalties, fines, wages, liquidated damages, restitutionary amounts, attorneys' fees and costs, punitive damages, controversies and liabilities which were or could have been raised based on the facts, conduct, and/or omissions alleged in the operative Complaint, … and predicated on the foregoing wage and hour violations as well as on any FLSA violation, during the Release Period.

Dkt. No. 64-5 at 19-20. FLSA Collective Action Members who cash settlement checks will specifically release "claims for (1) failure to pay minimum wage under the federal FLSA and (2) underpayment of overtime under the federal FLSA." Dkt. No. 64-5 at 20. The release period is defined as April 29, 2011 to June 9, 2016 for both sets of claims, since preliminary approval occurred after June 9, 2016. *Id*. at 5. Each plaintiff for whom the Court approves a service award also will provide a general release of "all claims arising directly or indirectly from Plaintiffs' employment with Released Parties and the termination of that employment." *Id*. at 21.

Notice will be sent by mail to all class members and will clearly summarize the financial

3

and other terms of the settlement. The notice will be individualized, identifying the "total workweeks worked by the Class Member during the Class Period, last known hourly rate, whether the Class Member shall have $500 deducted from his/her share because he/she signed a Release, and the estimated Individual Settlement Payment individual amount each class member will receive." *Id*. at 14-15. The notice will also provide information about how to opt-out or object to the settlement. *Id*. at 14-17.

## II.     FAIRNESS OF THE SETTLEMENT

When the parties reach a proposed settlement prior to class certification, the Court reviews the propriety of the certification and the fairness of the settlement. *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169, at *2 (N.D. Cal. Mar. 18, 2015). Rule 23(e) directs the Court to examine the proposed settlement and make a preliminary finding of fairness. A class action settlement may be approved only if the Court finds that it is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C). The parties bear the burden of showing that the proposed settlement is fair. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). There is a higher standard of fairness when settlement occurs before formal class certification, because "the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Sarkisov*, 2015 WL 1249169, at * 2 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Still, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992).

The primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice*, 688 F.2d at 624. To realize this goal, the Court will give preliminary approval of a class settlement and notice only when "[1] the proposed settlement appears to be the product of a serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives

4

1  or segments of the class, and [4] falls with the range of possible approval . . ." *Stokes v. Interline*
2  *Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *3 (N.D. Cal. Nov. 10, 2014) (citations
3  omitted).
4        The proposed settlement meets these requirements. The settlement was reached after
5  lengthy negotiations between the parties, following extensive investigation and litigation. Any
6  unused settlement funds do not revert back to the defendant, claimants are guaranteed a minimum
7  payment, and each class member will receive a check without having to file a claim. The Court
8  finds that the agreement is fair, reasonable, and adequate, and that it protects the interests of the
9  class members. Fed. R. Civ. Pro. 23(e)(1)(C).

### III.    CLASS CERTIFICATION

11       The parties request that the Court conditionally certify the proposed class for settlement
12 purposes only. In certifying a class for settlement purposes, review of the proposed class is "of
13 vital importance," as the Court lacks the opportunity to make adjustments to the class, as it
14 ordinarily would when a case is fully litigated. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620
15 (1997).
16       The proposed class settlement must satisfy the requirements of Federal Rule of Civil
17 Procedure 23(a) and (b)(3) to be certified. Rule 23(a) provides that a class action is available only
18 where: (1) the class is so numerous that joinder is impracticable; (2) common question of law or
19 fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4)
20 the representative parties will fairly and adequately protect the class interests. Additionally, Rule
21 23(b)(3) requires the Court to find that common questions of law or fact predominate over the
22 questions of individual class members and that a class action is the superior method for fair and
23 efficient adjudication.
24       The Court finds that the requirements of Rule 23(a) are met. The numerosity requirement
25 is met because there are approximately 519 class members. Dk. No. 64 at 13. The commonality
26 requirement is met because the resolution of the claims depends on common questions of law and
27 fact about the class members' employment with P.W. Stephens. The plaintiffs' claims meet the
28 typicality requirement because they are all current or former employees of P.W. Stephens and

there are many questions of law and fact common to members of the proposed class, including whether P.W. Stephens' policy of using estimated hours to calculate pay failed to compensate proposed class members for all hours worked. *Id.* at 13. The adequacy requirement is met because there is no indication of any conflicts of interest between the putative class representatives and the absent class members, and because plaintiffs' counsel appear to be well-qualified to serve as class counsel. For the same reason, the Court appoints the named plaintiffs as class representatives and finds that plaintiffs' counsel is adequate under Rule 23(g)(1) and (4) and appoints them as class counsel.

The Court also finds that the requirements of Rule 23(b)(3) are met. Common questions of law and fact predominate over any questions affecting only individual class members because the primary issues in the dispute revolve around P.W. Stephens' policies that applied uniformly to proposed class members, like whether P.W. Stephens' practice of ending the compensable part of the day at the job-site failed to compensate proposed class members for all hours worked. Dkt. No. 64 at 15. The superiority requirement is also met because it is likely that "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *See Wolin v. Jaguar Land Rover North Am.,* LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).

The preliminary approval motion also seeks the conditional certification of an FLSA collective action for plaintiffs' first claim for relief. Dkt. No. 64 at 16. The district court may, in its discretion, conditionally certify an FLSA collective action if plaintiffs meets their burden of showing that the putative collective action members are "similarly situated," and "[c]ourts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)." *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013). Here, where plaintiff has met the more "stringent" requirements for certification under Federal Rule of Procedure 23, the Court finds that plaintiff has satisfied the more lenient standard for conditional certification of the FLSA collective action as well.

## IV.  CLASS NOTICE

At the July 27, 2016 preliminary approval hearing, the Court expressed some concerns

with the proposed class notice. *See* Dkt. No. 69. By stipulation, the parties have since proposed a revised class notice. Dkt. No. 70. The Court finds that its concerns have been adequately addressed, and now approves the revised class notice. The form uses language that is concise and easy to understand, and complies with Rule 23(c)(2). The Court also approves the notice under the FLSA. The notice form clearly explains how to opt out of the settlement, and states that class members will stay in the lawsuit and receive a check upon final approval of the settlement if they do not opt out. Dkt. No. 70-1 at 1, 4-5. Additionally, the parties' proposed plan for directing notice meets all of the requirements of notice to Rule 23(b)(3) class members. The notice form is approved.

## CONCLUSION

The Court sets a hearing for final approval of the settlement on December 8, 2016 at 10:00 a.m. The parties are directed to file any motion for attorneys' fees and costs and service awards by August 8, 2016, and to file any motion for final approval no later than November 2, 2016. The Court will decide at the final approval stage the attorney's fees request and whether the named plaintiffs will receive an incentive payment for service as the class representatives, a practice that the Court has some concerns about, as stated in prior class settlement orders.

**IT IS SO ORDERED.**

Dated: August 10, 2016

JAMES DONATO
United States District Judge